Sachiko T. BOWER, Plaintiff,

v.

Frederick R. WEISMAN, Frederick Weisman Co., and Rare Properties, Inc., Defendants.

No. 85 Civ. 8916 (RWS).

United States District Court, S.D. New York.

June 30, 1986.

Montclare & Guay, New York City, for plaintiff; Paul D. Montclare, Richard F. Guay, of counsel.

Rogers & Wells, New York City, Crowley, Lebow & Cuneo, Los Angeles, Cal., for defendants; Margaret Blair Soyster, Barbara J. Green, Sandra L. Duggan, New York City, of counsel.

SWEET, District Judge.

Defendant Frederick R. Weisman ("Weisman") has moved to dismiss the second amended complaint ("complaint") of plaintiff Sachiko Bower ("Bower") (1) for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P.; (2) for a more definite statement pursuant to Fed.R.Civ.P. 12(e); (3) for a stay of the First, Second and Third claims in the complaint pursuant to the Federal Arbitration Act, 9 U.S.C. § 3; (4) for dismissal of claim Two for failure to state fraud with particularity as required by Rule 9(b), Fed.R.Civ.P.; (5) for dismissal of the Fourth, Fifth, Sixth and Seventh claims pursuant to Rule 12(b)(6) for failure to state a claim and; (6) for sanctions under Rule 11, Fed.R.Civ.P. For the reasons set forth below, these motions are granted in part and denied in part.

**Prior Proceedings**

Bower commenced this action in New York State court on November 7, 1985, naming Weisman, Frederick Weisman Co. ("FWC") and Rare Properties, Inc. ("Rare Properties"), both Delaware corporations, as defendants. After removal, this court ordered expedited discovery and a trial date of December 3, 1985 to permit a resolution of the townhouse dispute prior to a December 19, 1985 scheduled closing date on a sale of the townhouse to a third party. By stipulation and order of November 25, 1985, Bower agreed to vacate the property and reserved the right to bring a damage action for the events set forth before. On

January 18, Bower served the Second Amended Complaint in this action.

### The Pleadings

According to the Second Amended Complaint, in July, 1985, Bower and Weisman terminated a fifteen-year close personal and business relationship. According to Bower, in exchange for valuable business and social assistance which Bower rendered to Weisman during their relationship, Weisman promised to provide Bower with an economic interest in his affairs and to provide Bower and her daughter with financial security. Bower contends that Weisman agreed to provide these benefits even after their relationship terminated, as long as Bower, a Japanese citizen, did not remarry or leave the United States and that Weisman breached a series of written and oral agreements, codifying Weisman's promise of financial security.

Bower asserts that in the final version of this agreement dated July 6, 1985, Weisman agreed (1) to purchase a house in California for Bower at a cost of $6.5 million; (2) to provide Bower with an irrevocable trust in the amount of $3.9 million and $100,000 in trust for Bower's daughter; (3) to pay Bower an annual sum of $120,000 for ten years over and above a promissory note held by FWC dated November 1, 1983; (4) to pay Bower's living expenses until her remarriage or departure from the United States; (5) to provide rent-free possession of Weisman's New York townhouse until her remarriage or departure from the United States. Provision number (3) concerns a promissory note and consultant agreement executed on November 1, 1983 by FWC and Preferred Capital International Inc. ("Preferred Capital"), a corporation wholly owned by Bower.

In mid-July, 1985, the Bower-Weisman relationship terminated, and according to Bower, Weisman reneged on this agreement and attempted to coerce her to leave the townhouse, which she asserts was purchased with her own money but which she sold to Weisman in 1980 at his request to accommodate his tax needs in reliance on his promises of a rent-free tenancy. In September and November, 1985, Weisman instructed his agents to enter the apartment, to strip it of artwork and furniture which was purportedly the property of Weisman, to change the locks on Bower's door when she was at work and her daughter was home ill, and to station three armed guards in the townhouse lobby, with instructions to prevent the entry of "unauthorized" individuals. Furthermore, Bower claims that Weisman's real estate agents and attorneys made unauthorized visits to the apartment and disturbed her personal belongings.

The complaint alleges seven claims arising from the July 6, 1985 agreement outlined above, each of which is challenged in this motion. Claim One asserts tort and contract claims for money damages arising from the "breach of express agreements"; Claim Two alleges fraud, misrepresentation and deceit in connection with the agreement; Claim Three is for "breach of contract and conversion" and concerns Weisman's attempt to remove Bower from the townhouse and his alleged conversion of art and furniture. Claims Four and Five charge the defendants with trespass and false imprisonment in connection with the townhouse, and Claims Six and Seven concern intentional infliction of emotional distress, and private nuisance, also in connection with Weisman's actions to recover the townhouse.

### Jurisdictional Facts

As Weisman's motion challenges this court's jurisdiction over his person, it is necessary to set out the threshold jurisdictional facts. Weisman asserts that he is a California resident and has been such for forty-seven years, where he votes, owns real estate, and files his tax returns. While he admits to "occasional" visits to New York for social, cultural and entertainment purposes and to attend business meetings on behalf of a Maryland corporation, he insists that he owns no real or personal property in New York, has not negotiated or executed contracts in New York, and has not conducted business in New York.

Bower has put forth evidence demonstrating that Weisman was served with

process in this action on January 18, 1986 while he was staying at a hotel in New York. Bower has also annexed checks from a joint bank account maintained in the names of "Frederick Weisman and Sachiko T. Bower" with the townhouse address imprinted on the checks. Although Weisman states that this account was for Bower's convenience, he closed the account at the termination of their relationship on July 17, 1985 and withdrew the entire balance. Weisman's statements for this account, as well as other mail addressed to him, were mailed to the townhouse.

Weisman's affidavit of November 7, 1985 submitted in the prior state court proceedings recounts "... I occupied one of the residential units [of the townhouse property] as my living quarters in New York City, and I allowed plaintiff Bower to stay there as my companion/guest for approximately 5 years until July, 1985 when our relationship ended." The telephone records for the townhouse show a listing for three numbers under the name of "Mrs. F. Weisman" as well as a listing for FWC. Finally, in the affidavit which Weisman submitted in connection with the instant motion, Weisman admits to negotiating some "personal financial and business matters" with Bower and her accountant present, negotiations which Bower contends formed a part of the same agreement at issue in this action:

> On September 10, 1984, I attended a meeting in New York with plaintiff and our respective accountants. At that meeting, we engaged in preliminary discussions on a variety of topics regarding personal, financial and business matters. No agreement whatsoever with respect to any aspect of our dealings resulted from this meeting. In fact, there were numerous similar discussions which took place in California both before and after September 10, 1984, with respect to the same or similar topics.

Weisman affidavit, ¶ 2.

## Discussion

### I. Personal Jurisdiction

■ The subject matter jurisdiction of this case rests upon diversity of citizenship pursuant to 28 U.S.C. § 1332. Thus, the court must look to the New York Civil Practice Law ("CPLR") § 302(a) (McKinney 1972 & supp. 1984–85) to determine whether "long-arm" jurisdiction over defendant Weisman may be validly exercised. *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir.1963) (en banc). A court may rely on affidavits and other supporting materials to establish the jurisdictional facts, and the documents should be construed in the light most favorable to the plaintiff. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Moreover, to defeat Weisman's motion to dismiss for lack of personal jurisdiction, Bower need only make a *prima facie* jurisdictional showing. *Id.*

■ Weisman contends that his contacts with New York are too insubstantial for this court to appropriately exercise personal jurisdiction as he was present in New York for only approximately twenty days over the past year. However, the criteria to be employed in determining whether the requisite minimum contacts exist is not based upon a rigid quantitative analysis. "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). New York law requires that this court examine the totality of Weisman's activities within the state so that a determination may be made as to whether Weisman engaged in "purposeful activity" thereby invoking the benefits and protections of the laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y. 2443, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (1965).

Section 302(a)(1) of the CPLR provides that personal jurisdiction may be exercised over a nondomiciliary defendant where a

cause of action arises from a defendant's transaction of business within the state. Although Weisman claims to have done no business within New York, the affidavits submitted by the parties point to a contrary conclusion. On September 10, 1984, Weisman negotiated "personal financial and business matters" at a meeting held in New York with Bower and their respective accountants. Negotiation activity which substantially advances or is essential to the formation of a business agreement will constitute a legally sufficient basis for jurisdiction. *Geller v. Newell*, 602 F.Supp. 501, 503 (S.D.N.Y.1984) *citing Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951 (2d Cir.1967). Although this negotiation did not result in the formation of a new contract, it did result in a significant modification of the parties' pre-existing contract, and Bower's claim for breach of contract arises from this and subsequent modifications. The law of New York places great weight on the locale where the negotiations of the contract occur. *Dogan v. Harbert Construction Co.*, 507 F.Supp. 254 (S.D.N.Y.1980), and if these negotiations "substantially advance" or are "essential" to the formation of a contract, they will constitute a sufficient basis for the exercise of personal jurisdiction. *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 91 (2d Cir.1975).

The transaction of business requirement is also satisfied by other purposeful acts which defendant engaged in in New York State with regard to his relationship with Bower. "[C]ourts may look to factors such as listings in telephone directories, banking activities, letterheads showing a New York address." J. Weinstein, H. Korn & A. Miller, New York Civil Practice ¶ 302.11 (1978). First, Weisman maintained a bank account for a number of years in joint name with Bower, and has admitted to depositing funds in this account. The checks were imprinted with the name of both Weisman and Bower and included the townhouse address. Moreover, Weisman closed the account on July 17, 1985 and took control of the remaining balance. It would be disingenuous to argue that he

received no benefits from its existence in New York.

Second, although Weisman does not own the New York townhouse, which is held by defendant Rare Properties, he stated that he has "occupied one of the residential units as my living quarters in New York City" (Weisman affidavit, ¶ 3) and had allowed Bower to remain in the townhouse as his guest for a five year period. In addition, the joint bank account statements along with other mailings were addressed to Weisman at the townhouse residence. Finally, the townhouse had several telephone listings, one of which was under the name "Mrs. F. Weisman." While each factor standing alone would be insufficient to establish personal jurisdiction, when taken in the aggregate Weisman's contacts with New York have been substantial and continuous. *See Sterling National Bank & Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975).

Because section 302(a)(1) provides a basis for the assertion of personal jurisdiction over Weisman by this court, it is not necessary to make a determination as to whether Bower's tort claims arise from tortious acts within the meaning of CPLR section 302(a)(2). Weisman has purposefully availed himself of the protections and privileges of New York state, and the continuous contacts which he maintained with New York made it reasonable and foreseeable that he might be haled into court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

## II. Motion for a More Definite Statement

Weisman argues that pursuant to Fed.R. Civ.P. 12(e), he is entitled to a more definite statement with respect to two aspects of the complaint. First, Weisman asserts that the complaint fails to disclose the specific provisions of the alleged agreements upon which plaintiff relies. Moreover, he argues that the complaint fails to reveal which parts of the agreements have been mod-

ified and which provisions remain in effect after these modifications. Second, Weisman urges that the complaint fails to identify which of the three defendants is charged with each act and merely discusses all as "defendant," as set forth in paragraphs 36, 40, 43–47, 50 and 52–55. For the following reasons, this motion for a more definite statement is granted.

■ A motion for a more definite statement may be granted if "a pleading ... is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading ..." Fed.R.Civ.P. 12(e). A motion pursuant to Rule 12(e) should not be granted "unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Boothe v. TRW Credit Data*, 523 F.Supp. 631, 635 (S.D.N.Y.1981). With respect to Weisman's first assertion, Bower's complaint is not so unintelligible as to preclude Weisman from drafting a responsive pleading. The essence of a complaint is to inform the defendant as to the general nature of the action and as to the incident out of which a cause of action arose. *Id.* (quoting *Roberts v. Acres*, 495 F.2d 57, 58 (7th Cir.1974)). Bower's complaint satisfies this requirement as it clearly identifies the offending acts. The complaint traced in detail the interactions of Bower and Weisman which led to the first written agreement of July, 1983, and the series of subsequent modifications that occurred in September through November of 1983, September, 1984, October, 1984 culminating in the final agreement of July 6, 1985, embodied in paragraph 25. Moreover, paragraph 26 describes the provisions of the agreement that were allegedly violated by Weisman. Weisman has been given fair notice of the claims against him, and nothing prevents him from formulating a responsive pleading.

■ Weisman seeks to remove the ambiguity that is present in paragraphs 36, 40, 43–47, 50 and 52–55. These paragraphs employ the term "defendant" without specifying which particular defendant is re-

ferred to. Obviously, Weisman cannot effectively respond to Bower's complaint until he knows which claims Bower is asserting against him in his individual capacity. Although Rare Properties is a wholly owned subsidiary of FWC, of which Weisman is the sole owner, Bower has not produced any evidence that the proper corporate forms have not been observed with respect to these corporations. The motion for a more particular statement will be granted on this ground.

## III. Motion to Stay Pending Arbitration of Claims

■ Weisman asserts that Bower's First, Second and Third claims arise out of a November 1, 1983 consulting agreement between FWC and Preferred Capital International. Because this consulting agreement contained an arbitration clause, Weisman asserts that those claims should be stayed pursuant to the Federal Arbitration Act, 9 U.S.C. § 3. This motion is denied.

The consulting agreement of November, 1983 involved neither the plaintiff nor the defendant in an individual capacity but rather involved two corporate entities. This should be distinguished from the series of agreements that Bower and Weisman entered into in July, 1983 and which continued through July, 1985. Although these subsequent agreements often incorporated aspects of the consulting agreement, all modifications were a result of personal promises made by Weisman to Bower for the purpose of providing Bower with a degree of financial security. For example, in the letter constituting the July, 1983 agreement, Weisman included a provision entitled "Consulting Contract" which stated, "... you will continue to receive a consulting fee from either Frederick Weisman Company or some other entity within the Frederick Weisman group ... The amount of such consulting fee shall be determined between us." Thus, Weisman's personal promise to pay Bower pursuant to an amended consulting arrangement does not come within the ambit of the November, 1983 agreement and is not subject to

arbitration. The motion to stay the First, Second and Third claims pending arbitration is denied.

## IV. Motion to Dismiss for Failure to State Fraud with Particularity

■ Fed.R.Civ.P. 9(b) requires that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." There is tension between the specificity required under Rule 9(b) and the liberal pleading allowances of Fed.R.Civ.P. 8(a)(2) which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, Rule 9(b) does not render Rule 8 meaningless in fraud cases. The two rules must be read in conjunction with each other. *See,* 5 Wright & Miller, Federal Practice and Procedure: Civil § 1298, p. 406. Courts have not struck a balance between these rules by devising an easily applied test. Thus, the degree of specificity required will be dependent upon the facts of each case. *CIT Financial Corporation v. Sachs,* 10 F.R.D. 397, 398 (S.D.N.Y.1950).

Bower's allegations do no more than state generally that all three defendants intentionally misrepresented and defrauded the plaintiff by making promises and representations. In paragraph 32, Bower alleges that "[t]hose representations of the defendants were false and deceitful at the time they were made to the plaintiff ..." Such sweeping statements fail to clarify which alleged agreements form the basis of Bower's claim for fraud. "[A well-pleaded claim of fraud] normally includes the time, place, and content of the false representations, the facts misrepresented, and the nature of the detrimental reliance ..." *Elster v. Alexander,* 75 F.R.D. 458, 461 (N.D. Ga.1977); *see also Segal v. Gordon,* 467 F.2d 602 (2d Cir.1972). Bower's claim fails with respect to all of these particulars. Moreover, Bower's failure to separate Weisman from the two corporate defendants involved in this case makes it impossible for Weisman to frame an effective response.

Rule 9(b) seeks, in part, to assure that defendants "... are given notice of the exact nature of the fraud claimed, sufficient to permit responsive measures." *Todd v. Oppenheimmer & Co., Inc.,* 78 F.R.D. 415, 419 (S.D.N.Y.1978) (*citing Felton v. Walston & Co., Inc.,* 508 F.2d 577, 581 (2d Cir.1974)). Here, Bower's pleadings are vague and fail to provide the specificity required by Rule 9(b). Therefore, Bower's Second claim for misrepresentation, fraud and deceit is dismissed with leave to replead.

## V. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

When determining whether to grant a Rule 12(b)(6) motion, the court must primarily consider allegations in the complaint. 5 Wright & Miller, Federal Practice and Procedure: Civil § 1357, P. 592. However, at this early stage of the proceedings, a court's review of the sufficiency of the complaint is a very limited one. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The allegations are accepted as true, and the complaint is construed in a light most favorable to the pleader. *Id.*

The motion to dismiss for failure to state a claim is disfavored and is seldom granted. *Arfons v. E.I. DuPont de Nemours & Co.,* 261 F.2d 434, 435 (2d Cir.1958). The reason for such a policy is two-fold. First, "[t]he salvaged minutes that may accrue from circumventing these procedures can turn to wasted hours if the appellate court feels constrained to reverse the dismissal of the action." *Rennie & Laughlin, Inc. v. Chrysler Corporation,* 242 F.2d 208, 213 (9th Cir.1957). Second, courts are wary of dismissal in view of the policy of the federal rules which seeks to have determinations reached on the merits. *Id.* The test that is in accord with these goals is that "... a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.*

**540**

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Thus, this court must determine in the light most favorable to the plaintiff whether the following claims state any basis for relief.

### A. Trespass

Plaintiff has alleged the necessary elements to sustain a cause of action in trespass. From July, 1983 to July, 1985, the agreements between Bower and Weisman contained a provision that in the event of the breakup of the parties' relationship, Bower would be permitted to reside rent-free at the 73rd Street townhouse so long as she paid all maintenance expenses and did not remarry or move out of the country. (2d Am.Complt. ¶¶ 23(ii), 24.c.4, 25.e, 26.e). Upon termination of the relationship in August, 1985, plaintiff alleges that she was in actual possession of the townhouse and that she shared this residence only with her daughter, Teru. "Trespass is an action for injury to possession for which an action may be maintained even against an owner by the one entitled to possession." *Meadow Point Properties v. Nick Mazzoferro & Sons,* 219 N.Y.S.2d 908, 909 (Sup. Ct.Suffolk Co.1961), *citing Steinfeld v. Morris,* 258 App.Div. 228, 16 N.Y.S.2d 155 (N.Y.Sup.1939). Because Bower alleges to have been in actual (and exclusive) possession of the townhouse, she may maintain an action for trespass.

■■■ Weisman contends that at most, Bower's interest in the property was limited to that of a licensee whereby plaintiff could assert merely a personal privilege to occupy the townhouse. Considering the allegations in the light most favorable to the plaintiff, Bower's complaint asserts a possessory interest in the townhouse beyond a licensing arrangement. However, even if Bower only qualified as a licensee, she would not necessarily be precluded from bringing an action for trespass. Only a licensee who has no interest in the premises will be unable to maintain such action. Prosser & Keeton, *The Law of Torts* § 13 at 77, n. 92 (5th ed. 1984).

Bower has also successfully pleaded the other requisite elements of trespass. In paragraph 52, Bower asserts that Weisman, through his agents, intentionally entered the townhouse property without her consent. She alleges that artwork was removed from the premises by defendant and/or his agents (¶ 40). Bower also states that defendant changed her apartment locks (¶¶ 42, 43) and placed three armed guards at the entrance of the property (¶ 44).

As it does not appear beyond doubt that plaintiff has no possessory rights in the townhouse, it would be inappropriate to dismiss plaintiff's Fourth Claim for trespass. *See N.Y. Guardian Mortgagee Corp. v. James H. Northrop, Inc.,* 75 App. Div.2d 577, 426 N.Y.S.2d 579 (2d Dep't 1980). Defendant's motion to dismiss the trespass claim is denied.

### B. False Imprisonment

■■■ The action for the tort of false imprisonment seeks to protect an individual's freedom from restraint of movement. Prosser & Keeton, *The Law of Torts,* § 11 at 47 (5th ed. 1984). The Court of Appeals of New York has set forth the following elements as constituting a cause of action for false imprisonment: (1) defendant intended to confine the plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement, and (4) confinement was not otherwise privileged. *Broughton v. State of New York,* 37 N.Y.2d 451, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 313 (1975), *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975) (*citing* Restatement, (Second) of Torts, § 35).

Plaintiff's Fifth Claim for false imprisonment fails to set forth any facts which would support the allegation that plaintiff was confined at the 73rd Street townhouse. Bower alleges that due to the posting of three armed guards at the townhouse entrance, she "has been unable to freely enter and exit her home in the unfettered manner to which she is accustomed and ... has become a prisoner by virtue of the

defendant's acts." (2d Am.Cmplt. ¶ 58). However, other paragraphs of Bower's Second Amended Complaint are entirely at odds with the proposition set forth above. Paragraph 42 states that on November 5, 1985, plaintiff left her house to go to work. Paragraph 44 states that the three armed guards were instructed "not to permit access to anyone *other than* the plaintiff, her daughter, or a person seeking access for emergency and/or medical purposes." This indicates that plaintiff was permitted ingress and egress from the townhouse. Moreover, paragraph 47 alleges that unauthorized persons entered the townhouse while Bower was not home. Plaintiff's own allegations support the conclusion that her movement was unrestrained. Thus, although Bower alleges that guards were placed in the lobby to restrict her entry and exit (2d Am.Cmplt. ¶ 57), she has failed to allege that her movement was restricted. Moreover, even if the conduct of defendant's agents caused Bower to feel like a prisoner (2d Am.Cmplt. ¶ 58), this is not enough to sustain a cause of action for false imprisonment since Bower has not alleged actual physical confinement. *See Sauls v. Bristol-Myers Co.,* 462 F.Supp. 887, 889 n. 9 (S.D.N.Y.1978). Plaintiff's Fifth Claim for false imprisonment is dismissed with leave to replead within twenty (20) days.

### C. Intentional Infliction of Emotional Distress

The following components form a claim for intentional infliction of emotion distress: (1) an extreme and outrageous act by the defendant; (2) an intent to cause severe emotional distress; (3) resulting severe emotion distress; (4) caused by the defendant's conduct. *Conniff v. Dodd, Mead & Co.,* 593 F.Supp. 266, 269 (S.D.N.Y. 1984) *(citing Burba v. Rochester Gas and Electric Corp.,* 90 App.Div.2d 984, 456 N.Y.S.2d 578, 579 (4th Dep't 1982)). Plaintiff's complaint pleads each of the necessary elements of this cause of action to survive a 12(b)(6) challenge.

Paragraph 63 sets forth the "outrageous" acts by defendant that were directed at the plaintiff. First, three armed guards were placed in the lobby of the townhouse to prevent all persons except Bower, her child and medical personnel from entering or exiting from the townhouse. Second, the locks to Bower's apartment were changed without her consent which caused her to become "frightened and distraught" (¶ 42). Third, Weisman, through his agents, entered plaintiff's apartment without her permission and removed artwork without her consent (¶ 40). Bower contends that defendant intended that such acts would cause her severe emotional distress (¶ 64), and that she has, in fact, "suffered severe mental anguish, anxiety, and unwarranted pain and suffering." (¶ 65).

These allegations demonstrate that defendant embarked upon a course of conduct that was designed to intimidate, threaten and humiliate the plaintiff and which resulted in emotional upset. It will be for the trier of fact to determine whether defendant's conduct went beyond all reasonable bounds of decency, *Halio v. Lurie,* 15 App.Div.2d 62, 222 N.Y.S.2d 759, 764 (2d Dep't 1961), and would arouse resentment against the defendant as to cause the trier of fact to exclaim that such conduct was "outrageous". Restatement (Second) of Torts § 46 comment (d) (1965).

### D. Private Nuisance

The elements of a private nuisance in New York are: (1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act. *Copart Industries, Inc. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 173, 362 N.E.2d 968, 971 (1977) (citations omitted). Plaintiff's Seventh Claim for private nuisance must be dismissed since Bower has failed to allege an interference which is substantial in nature and unreasonable in character.

■ The "substantial" and "unreasonable" interference requirements distinguish an action for private nuisance from that of trespass. An action for trespass can be maintained without a showing of damage because it is the unprivileged entry upon the land that creates an immediate cause of action. However, an action for private nuisance cannot be sustained without a showing of damages. "The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct." Prosser & Keeton, *supra*, § 87 at 623. "The law does not concern itself with trifles and there must be a real and appreciable invasion of the plaintiff's interests before he can have an action for either a public or private nuisance." Restatement (Second) of Torts § 821F comment c.

■ In paragraph 68, Bower asserts that defendant trespassed upon the townhouse, removed articles from the premises, changed locks and positioned guards in the lobby. However, plaintiff failed to allege that these acts caused a reduction in the value of the property. "... [A]nnoyance cannot amount to unreasonable interference until it results in a depreciation in the market or rental value of the land." Prosser & Keeton, *supra*, § 88 at 627. Plaintiff's failure to plead a substantial and unreasonable interference with the land is fatal to her claim for private nuisance.

## VI. Rule 11 Fed.R.Civ.P.

■ "Rule 11 of the Federal Rules of Civil Procedure requires the plaintiff's attorney to certify, on pain of sanction, that to the best of his knowledge, information and belief the complaint is warranted by existing law or a good faith argument for the extension of existing law." *Dore v. Schultz*, 582 F.Supp. 154, 158 (S.D.N.Y. 1984).

There is nothing before this court to suggest that plaintiff's claims are meritless nor is there anything to suggest that such claims were filed for improper purposes. Thus, defendant's motion for Rule 11 sanctions against the plaintiff is denied. In summary, Weisman's motion for a more definite statement pursuant to Fed.R.Civ.P. Rule 12(e) and motion to dismiss the Second Claim in the Complaint for failure to state fraud with particularity pursuant to Rule 9(b) is granted, and Bower has leave to replead within thirty (30) days of this opinion. In addition, Bower's Fifth Claim for false imprisonment, and Seventh Claim for private nuisance are dismissed, as they fail to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). All other motions are denied.

IT IS SO ORDERED.