Sachiko T. **BOWER**, Plaintiff,

v.

**Frederick R. WEISMAN, Frederick Weisman Co., and Rare Properties, Inc., Defendants.**

**No. 85 Civ. 8916 (RWS).**

United States District Court, S.D. New York.

Dec. 31, 1986.

47. *Cf. Allstate Ins. Co. v. Foschio,* 93 A.D.2d 328, 462 N.Y.S.2d 44 (2d Dep't 1983).

Montclare & Guay, New York City, for plaintiff; Paul D. Montclare, Richard F. Guay, of counsel.

Summit, Rovins & Feldesman, New York City, Crowley, Lebow & Cuneo, Los Angeles, Cal., for defendants; Michael A. Lacher, John L. Amabile, Kathryn J. Fritz, of counsel.

## OPINION

SWEET, District Judge.

Defendants Frederick R. Weisman ("Weisman"), Frederick Weisman Co. ("FWC") and Rare Properties, Inc. ("Rare Properties") have moved for an order (i) staying this action pending determination of a related case in state court in California, (ii) dismissing for failure to state a claim the First, Second, Third, and Fourth Claims of the Third Amended Complaint as against all defendants pursuant to Fed.R. Civ.P. 12(b)(6); and (iii) dismissing for failure to state a claim the Fifth Claim as against FWC and Rare Properties pursuant to Fed.R.Civ.P. 12(b)(6). Defendant FWC has moved to dismiss the action for lack of personal jurisdiction pursuant to Fed.R. Civ.P. 12(b)(2). Although they did not properly notice it, defendant Weisman has also moved to dismiss the Sixth claim for failure to state a claim pursuant to 12(b)(6), and all defendants have moved to dismiss the Third claim against all defendants for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b), and the First through Fifth claims for failure to amend pleadings as directed by the court. Both defendants and Bower briefed these improperly noticed issues, and, thus, non-movant Bower suffers no prejudice from the court's addressing them.

Bower cross-moved for an order staying the defendants from proceeding in the California state actions until this action has been resolved.

Parties were heard by counsel in this court on November 14, 1986. For the reasons set forth below, both defendants' and plaintiff's applications for stays are denied, Rare Properties' motion to dismiss for lack of personal jurisdiction is denied, defendants' 12(b)(6) motions to dismiss are denied, defendants 9(b) motions to dismiss are denied, and defendants motion to dismiss for failure to comply with a previous order is denied.

### Prior Proceedings and the Present Complaint

Bower commenced this action in New York State court on November 7, 1985. Defendants removed the case to this court,

and since then there has been extensive motion practice and discovery. The court's June 30, 1986 opinion discusses the case's procedural history in more detail. *Bower v. Weisman*, 639 F.Supp. 532 (S.D.N.Y. 1986) [hereinafter cited as *Bower I*]. That opinion also outlines at greater length Bower's allegations in this action, which have changed primarily (although not entirely) in form rather than substance.

For the purpose of the present motion, several procedural occurrences since then have become significant. The California State case filed by Weisman, FWC and Rare Properties after they removed this action from New York state court to this court has continued to progress. In the California case, Weisman and his companies enjoy the status of plaintiff, and Bower, plaintiff in this case, is relegated to the role of defendant. Weisman, who is 74, has invoked the California age preference statute, Cal.Civ.Code § 36 (West 1979 & supp.1981), which puts his trial on a faster track than other California cases. At present that action is scheduled for trial in California no later than January 15, 1987, although some question was raised at argument as to when a case with such a date would actually go out for trial. The California court has declined to stay its action pending resolution of this case.

The other significant procedural fact is that in accordance with *Bower I*, Bower has amended her complaint. The Third Amended Complaint contains six claims: 1) a claim for breach of express contract; 2) a claim for fraud; 3) a claim for breach of contract and conversion; 4) a claim for trespass; 5) a claim for the intentional infliction of emotional harm; 6) a claim arising under California law for breach of implied contract. The first five claims are against Weisman, FWC, and Rare Properties; the sixth is against Weisman alone.

### I. The Stays

██ Bower has charged that Weisman's California lawsuit is a continuation of a pattern of harassment and intimidation that began when the couple's relationship

deteriorated and Weisman allegedly used armed guards to evict her from what had until then been her home. She argues that Weisman filed a duplicative suit in a forum 3,000 miles from her home on the East Coast to increase her cost of vindicating her rights, as well as to deprive her of the procedural advantage of proceeding as plaintiff in this case (as opposed to cross-complainant in California) and of her rightful choice of forum.

Accepting that Bower has been put at a significant disadvantage by Weisman's procedural maneuvers, this court is nonetheless foreclosed from staying the ongoing California action. The Anti-Injunction Act, 28 U.S.C. § 2283, provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The settled rule is "that an injunction cannot issue to restrain a state action *in personam* involving the same subject matter from going on at the same time." 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4225, at 335 (1978). In *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295–96, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970), the Supreme Court wrote:

Although the federal court did have jurisdiction of the railroad's complaint based on federal law, the state court also had jurisdiction over the complaint based on state law and the union's asserted federal defense as well.... In short, the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts. Therefore the state court's assumption of jurisdiction over the state law claims and the federal preclusion issue did not hinder the federal court's

jurisdiction so as to make an injunction *necessary* to aid that jurisdiction.

(citations omitted) (emphasis in original). Commenting on this passage, Wright, Miller and Cooper have concluded:

It is immaterial that the state court action involves a federal question of federal law, or that findings in it may have a collateral estoppel effect in the federal action, or even that the state action may involve a claim that is a compulsory counterclaim in the federal action. The "necessary in aid of its jurisdiction" exception does not allow a federal court to enjoin state proceedings merely because they involve issues presented in a federal in personam action.

17 *Federal Practice and Procedure* § 4225, at 336 (1978) (footnotes omitted). Accordingly, an order will not issue enjoining the California action.[1]

■ As to defendants' application that the court stay this action, two Supreme Court cases set out the standards for when a federal court should stay litigation before it in deference to a pending state court action. In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the court adopted guidelines for determining when a federal court should dismiss a federal action in favor of a state court action, and in *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), it held that the same standards should be applied where the remedy sought is a stay rather than dismissal, since "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Id.* at 28, 103 S.Ct. at 943.

In *Colorado River*, the court addressed the circumstances under which a district court may decline to exercise or postpone its exercise of jurisdiction:

[A]bstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy proper-

---

1. Although Bower technically seeks to enjoin the parties in the California action rather than the state proceeding itself, the Supreme Court has said, "the prohibition of § 2283 cannot be evaded by addressing the order to the par-

ties...." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *see also* C. Wright, A. Miller & E. Cooper, 17 *Federal Practice and Procedure* § 4222, at 317 (1978).

ly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest. *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89 [79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163] (1958). 424 U.S. at 813, 96 S.Ct. at 1244. The court then outlined the three general categories of abstention found in its previous decisions: (1) where a "federal constitutional issue ... might be mooted or presented in a different posture by a state court determination of pertinent state law," *id.* at 814, 96 S.Ct. at 1244; (2) where "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *id.;* and (3) where "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings" or certain state enforcement proceedings, *id.* at 816, 96 S.Ct. at 1245.

Of these three, the only category colorably implicated in this case is the second; Weisman argues that because Bower's sixth claim is grounded in California law, the issue is more appropriately litigated in the California court. The issues in this case, however, fall within legal terrain that California courts have staked out thoroughly. Here it is not *doctrine* but *facts* that might make for a difficult case, as is so often the situation in cases involving oral or implied contracts. Because "difficult questions of state law bearing on policy problems of substantial public import" have not been presented, this case does not merit a stay on such a ground.

The Supreme Court has recognized that considerations of judicial administration can also sometimes warrant abstention, and hence a stay. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. The Court identified three factors to consider in assessing a stay on the grounds of wise judicial administration: 1) "the inconvenience of the federal forum"; 2) "the desirability of avoiding piecemeal litigation"; and 3) "the order in which jurisdiction was obtained." *Id.* at 818, 96 S.Ct. at 1246.

In this case, considerations in the first of the three grounds do not cut either way. It would be more convenient for the defendant to litigate the issues in California, and more convenient for the plaintiff to litigate them here.

Likewise, the third of the factors does not lead to a stay. The suit in federal court was initiated before the suit in state court, and discovery has progressed to advanced stages in both actions. Although the California age preference statute, Cal. Civ.Code § 36 (West 1979 & supp. 1981), may result in trial in the California action by January 15, 1987, to date no firm trial date has been set. In addition, defendants' present motion has contributed somewhat unnecessarily to the delay in this case.[2]

Therefore, if the court is to stay this action, it would do so under the second factor, "the desirability of avoiding piecemeal litigation." As the Court explained in *Moses H. Cone:*

> When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state court litigation will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismiss at all.... Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court *will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.*

460 U.S. at 28, 103 S.Ct. at 943 (emphasis added). Since the trespass claims are not a part of the California case, the court may have to resolve that issue even if the action were stayed pending resolution of the California case. It is possible therefore that

---

**2.** The court notes, on the other hand, that Bower has been sanctioned for dilatory motions in the California action.

the parallel state court litigation may, consequently, not be a vehicle for the "complete" resolution of the issues between the parties under *Moses H. Cone.* Of course, any duplicative or piecemeal litigation that this would cause can be laid squarely at the feet of Weisman, FWC, and Rare Properties; they, after all, chose to file a separate action in California rather than asserting their claims in this action as counterclaims pursuant to Fed.R.Civ.P. 13.

## II. Motions to Dismiss for Failure to State a Claim

### A. First Claim: Breach of Express Contract

#### 1. Agreements Not Enforceable Against Company

■ According to the defendants, the July 15, 1983, and the October 14, 1983 documents are not, as a matter of law, binding on Weisman's two corporations. It is alleged, however, that Weisman is an officer and director of both FWC and Rare Properties, and sole owner of FWC of which Rare Properties is a wholly-owned subsidiary. In the July 15 document,[3] Weisman speaks for himself *and* for his corporations: "I (or one of my corporations, as the case may be) will have an option...." In subsequent paragraphs, the document explicitly purports to bind both FWC and Rare Properties. In the October 14 letter[4] Weisman again speaks for himself and his business: "I will continue to take care of you the way I did last year & company will pay you your salary...." Given Weisman's proclivity to speak at the same time on behalf of himself and his corporations, the court will not now, in the posture of a Rule 12(b)(6) motion, hold that as a matter of law the documents in question were not meant to bind the corporations. What hat Weisman was wearing is properly a question of fact.

■ Furthermore, Bower has pled that Weisman and his companies are mere alter egos. Defendants have conceded that New York law accepts the application of an alter ego theory when shareholders are using the corporation as a conduit for their own personal business so as to shield themselves from personal liability or where it is "necessary 'to prevent fraud or to achieve equity.'" *Perez v. One Clark Street Housing Corp.,* 108 A.D.2d 844, 485 N.Y. S.2d 346 (1985) (quoting *Billy v. Consolidated Machine Tool Corp.,* 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934 (Ct.App. 1980)). They argue, however, that Bower has pled her alter ego theory in such a conclusory manner that the court cannot allow her to go forward on it, and cites New York pleading cases to that effect. *E.g., Cusumato v. Iota Indus. Inc.,* 100 A.D.2d 892, 893, 474 N.Y.S.2d 579 (1984) (memo opinion). Defendants cite no federal authorities for the proposition that pleading an alter ego theory in federal court requires detailed factual allegations, and such a contention would tend to run against the system of notice pleading adopted in the Federal Rules of Civil Procedure. In addition, even if it were necessary for Bower to plead facts from which an inference could be drawn that Weisman used his corporations to conduct his personal business, she has done so. Aside from the documents incorporated by reference in the complaint, which show Weisman using his corporations to do his personal business, Bower has alleged a series of transactions among herself, Weisman, Rare Properties, and FWC (all of which must be taken as true) which might well support an inference that the corporations did naught but their owner's bidding, including extensive and inextricable involvement in his personal affairs.

#### 2. Bower's Standing Under "Consultant Agreement"

Defendants submit that Bower has no standing to sue under the "Consultant

3. The July 15 letter is attached to the complaint as an exhibit and incorporated by reference in it, and thus is deemed a part of the pleadings for the purpose of a 12(b)(6) motion. Fed.R.Civ.P. 10(c); *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985). Weisman has claimed that this document is a forgery. For the purpose of this motion the court must assume it is not.

4. Also incorporated into the complaint by reference.

Agreement" that she executed on November 1, 1983 in her capacity as president of Preferred Capital International. As set forth in the court's prior opinion, the Consultant Agreement is a separate contract between two entities. *Bower*, 639 F.Supp. at 538. The contract at issue here is "Weisman's personal promise to pay Bower pursuant to an amended consulting arrangement...." *Id.* The contract between the corporate entities can be looked at alternatively as evidence that the oral promise was indeed made, that the terms of the oral contract were as Bower says, or that Weisman used his various corporations to conduct his personal affairs in support of Bower's alter ego theory. As to whether Weisman's personal promise to Bower binds the corporation as well, the answer may depend on the final factual resolution of Bower's alter ego claim, which has already been addressed.

### 3. Lack of Consideration

Defendants argue that any oral modifications of agreements must fail because of lack of consideration.

■ However, the contract here alleged is a unilateral contract, that is, a contract in which a promise is exchanged for an act. Weisman promised to provide Bower with certain benefits as long as Bower forebore from getting married, moving in with someone else, or returning to Japan. If Bower had, for instance, returned to Japan, she would not have *breached* the contract, but would have relieved Weisman of certain financial obligations. Thus by changing her conduct, Bower at any time had the right to end the contract without being in breach. This being the case, adequate consideration on her part has been alleged for amending the contract terms; she agreed not to exercise her right to end the contract in consideration for modification of certain of the contract terms.

Even were this contract a more traditional bilateral contract, there is a trend in modern contract law towards loosening the consideration requirement for contract modification, particularly with regard to parties who continuously do business with each other. For instance, the Uniform Commercial Code as enacted by New York directs: "An agreement modifying a contract within this Article needs no consideration." N.Y.U.C.C. Law § 2.2–0 (McKinney 1964). Although this contract does not fall within the command of the U.C.C., courts have been known to borrow from the U.C.C. when deciding common law contract issues. *E.g., Laudisio v. Amoco Oil*, 108 Misc.2d 245, 249, 437 N.Y.S.2d 502 (N.Y. Sup.Ct.1981) ("fundamental public policy embodied in the U.C.C. ... applied by analogy" to transaction outside ambit of Code); *Zabatha v. Dairy Mart*, 381 Mass. 284, 408 N.E.2d 1370, 1375 (Mass.1980).

### 4. Statute of Frauds

■ Defendants claim that the alleged oral ten-year extension of the consulting agreement is barred by the statute of frauds. N.Y.Gen.Oblig.Law § 5–701 (McKinney Supp.1987). "New York courts perhaps ... believing that strict application of the statute causes more fraud than it prevents, have tended to construe it warily." *Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 106 (2d Cir.1985). Thus, "the one-year provision has been held not to preclude an oral contract unless there is 'not ... the slightest possibility that it can be fully performed within one year.'" *Id.* Here, if Bower had moved back to Japan six months after the agreement, the contract would indeed have been completed within a year and, consequently, the statute of frauds is inapt.

Defendants claim also the alleged oral agreements with regard to real property are unenforceable because of the statute of frauds. However, there is explicit language in the writings dated July 15, 1983 and October 14, 1984 (both of which are alleged as part of the complaint) that are signed by both parties memorializing the agreements. In addition, under New York law, "A party's 'partial performance' of an oral agreement conveying an interest in real property will be deemed sufficient to take such contract out of the statute of frauds if it is demonstrated that the acts constituting partial performance are 'un-

equivocally referrable to said contract.'" *Mihalko v. Blood,* 86 A.D.2d 723, 446 N.Y. S.2d 573, 575 (3d Dept.1982) (citation omitted). The complaint has adequately alleged partial performance.

### 5. Definiteness of Terms of July 6, 1985 Writing

■ Defendants challenge the July 6, 1985 writing on two grounds: lack of consideration and lack of definiteness. The document, which is attached to the complaint and thus a part of it, reads:

July 6th, 1985

Dear Sachiko—

I told you today that I will continue to take care of your living expenses the way I did last year & company will pay you your salary until you get married or move away from USA.

I want to take care of you because I love you but cannot marry you but please be good friends and see each other as much as we can.

Love Fred

Defendants claim that "the only consideration found in the note" is the language in the second paragraph, and point out that love and affection are not legally cognizable consideration. Although they are obviously right that love and affection are not cognizable consideration, as noted above, Bower must forebear from certain conduct to enjoy the benefit of her bargain. Defendants have cited no authority for the proposition that the existence of love and affection between parties nullifies the existence of otherwise valid consideration.

■ As to defendants' assertion that the document is too indefinite to be enforced, Weisman memorialized his promise to take care of Bower's living expenses at the same level as the previous year. Determining last year's expenses is merely a matter of accounting, and does not fall into the category of cases cited by defendants in which, for instance, a court would have had to decide what was meant by the opaque phrase "whatever programs would be necessary to meet the housing needs [for a group]", *Brookhaven Housing Coalition v. Solomon,* 583 F.2d 584, 593 (2d Cir.

1978), before it could enforce a writing as a contract.

### B. Second Claim: Fraud

#### 1. Overlap of Fraud and Contract

■ Defendants claim that Bower's second count, "Misrepresentation, Fraud and Deceit" is but a restatement of the breach of contract claim. Essentially, Bower alleges that at the time defendants entered into contracts, they never had any intention of keeping them; in other words, they fraudulently misrepresented their present intention in order to cause her to act to her own detriment.

Both parties have cited New York authorities on this issue. Over a quarter century ago the New York Court of Appeals held in *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958), that a cause of action in fraud is made out when one represents that he intends to perform a contract while knowing, at the time the representation is being made, that the statement is false and that he in fact intends to do no such thing.

*Channel Master* involved two claims. In the first claim, the plaintiff alleged that the defendant, in order to induce the plaintiff to enter into a contract, represented that he had goods on hand for purchase when in fact he did not. In the second, which is critical to the claim here, the plaintiff alleged that the defendant stated that "it was its intention" to perform certain acts, when "such representation was false and known by defendant to be false." In other words, the only allegation in the second *Channel Master* claim was that the defendant made a false statement about his intention to perform.

The Court of Appeals held that both claims stated a cause of action. With regard to the second, the court wrote, "[O]ne 'who fraudulently makes a misrepresentation of * * * intention * * * for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction' is liable for the harm

caused by the other's justifiable reliance upon the misrepresentation." 4 N.Y.2d at 407; 176 N.Y.S.2d at 262, 151 N.E.2d at 836 (quoting Restatement (First) of Torts § 525, at 59 (1938)). The court explained, "A person's intent, his state of mind, it has long been recognized, is capable of ascertainment and *a statement of present intention is deemed a statement of a material existing fact*, sufficient to support a fraud action." *Id.* (emphasis added). Thus, the Court of Appeals determined that present intention is as much a fact as is the availability of goods to sell. *Id. See also Sabo v. Delman*, 3 N.Y.2d 155, 162, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957).

Defendants have urged on the court New York Appellate Division cases that stand for the proposition that: "A contract action may not be converted into one for fraud by the mere additional allegation that the contracting party did not intend to meet his contractual obligation." *Comtomark, Inc. v. Satellite Communications Network*, 116 A.D.2d 499, 497 N.Y.S.2d 371, 372 (1st Dept.1986) (Memo Decision). *See also Spellman v. Columbia Manicure Mfg.*, 111 A.D.2d 320, 489 N.Y.S.2d 304 (2d Dept. 1985) (Memorandum by the Court); *Tesoro Petroleum Corp. v. Holborn Oil Co. Ltd.*, 108 A.D.2d 607, 484 N.Y.S.2d 834 (1st Dept. 1985) (Memo Decision). *Spellman*, for instance, distinguished *Channel Master's* holding on the grounds that it was "apparently tied to misrepresentations which were collateral or extraneous to the agreements entered into by the parties." 489 N.Y.S.2d at 307. With all due respect to the *Spellman* court, the second of the two claims in *Channel Master* was based entirely on misrepresentation of intention. *Channel Master*, 4 N.Y.2d at 406, 176 N.Y.S.2d at 261, 151 N.E.2d at 835.

Although the Court of Appeals has never explicitly overruled *Channel Master*, it has apparently acquiesced in the type of limited reading put forth by various lower courts, *see Spellman*, 489 N.Y.S.2d at 307 (citing cases), at least to the extent that it has not yet reversed them. Still, given that the Court of Appeals has not overruled *Channel Master*, this court does not find that "there are very persuasive grounds for be-

lieving that the state's highest court would no longer adhere" to its earlier decision. C. Wright & A. Miller, 19 *Federal Practice and Procedure* § 4507, at 92 (1982). Accordingly, Bower's fraud claim withstands this Rule 12(b)(6) attack.

### 2. Pleading Fraud with Particularity

Defendants argue that Bower's fraud claims should be dismissed because they fail to plead fraud with the particularity required by Fed.R.Civ.P. 9(b). Although not every paragraph is a model of pleading fraud under the federal rules, there is sufficient particularity as to time, place, content, and parties involved to meet the requirements of Rule 9(b). In addition, Bower has adequately pled reliance.

### C. Third Claim: Conversion

■ Defendants argue that Bower's conversion claim "merely mimics her claim for breach contract." [sic] However, in paragraph 48 Bower alleges that certain items were her exclusive property. In paragraphs 37 and 49 Bower alleges that the defendants, acting in concert, "took" and "removed" her property without her consent, and did so "wrongfully" and "in bad faith." She has properly pled conversion.

### D. Fourth Claim: Trespass

■ With regard to Bower's trespass claim, defendants have reincarnated an argument that the last opinion in this case sought to dispatch. They claim that because Bower refers to the New York townhouse as "the couple's townhouse" a claim of trespass cannot be sustained. They argue, "A party's right to exclusive possession of land is essential to her maintenance of a claim for trespass." The problem for defendants' argument is that Bower does indeed plead that she had a right "to sole possession of the townhouse apartment" at paragraph 43 of the complaint. Dual *ownership* of the property is therefore not the issue. As said in the last opinion: "Because Bower alleges to have been in actual (and exclusive) possession of the town-

house, she may maintain an action for trespass." *Bower I,* 639 F.Supp. at 540.

### E. Fifth Claim: Emotional Distress

■ Defendants argue that Bower's claim for intentional infliction of emotional distress should be dismissed with regard to FWC and Rare Properties because she has failed to meet what defendants call "the prima facie requirement of intent."

In the first place, Rule 9(b) explicitly states: "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." In addition, Bower has pled sufficient facts from which a factfinder could infer malicious intent. The intricate relationships between Bower, Weisman, Rare Properties, and FWC, combined with the souring of the business deals among the parties, combined with the acts alleged in the complaint and discussed in *Bower I* at 639 F.Supp. at 541, could be enough to infer the corporations' malicious intent if it were necessary to plead the facts to make one out. In addition, as discussed, Bower has pled that the corporations and Weisman are alter egos.

### F. Sixth Claim: Implied Contract under California Law

Bower has claimed that during her relationship with Weisman an implied contract arose between them to divide equally all property accumulated by Weisman during the relationship, and that Weisman is now an involuntary trustee holding Bower's half of the property for her.

#### 1. Choice of Law

■ The first issue addressing the court is what state's law to apply with regard to the claim. If New York law applies, Bower has no proper implied contract claim under her allegations, because the New York Court of Appeals has explicitly "decline[d] to recognize an action based on an implied contract for personal services between unmarried persons living together." *Morone v. Morone,* 50 N.Y.2d 481, 489, 429 N.Y.S.2d 592, 596, 407 N.E.2d 438 (1980). California courts, on the other hand, have recognized such a claim under California law. *See Marvin v. Marvin,* 18

Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976).

In their brief, defendants state that they "believe it is New York law which is controlling." They marshal no facts in support of this "belief," and the only case they cite for their proposition is *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The *Erie* doctrine directs federal courts to apply state law when sitting in diversity, but does not shed light on the issue here—which state's law will be applied. 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4506, at 61 (1982).

As a federal court sitting in diversity, the court must apply the choice of law rules of the state in which the case was brought. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York courts apply the "paramount interest" test in contractual disputes. *Hutner v. Greene,* 734 F.2d 896, 899 (2d Cir.1984). This means "the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining state interests are those which relate to the purpose of the particular law in conflict." *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 382, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 584 (1969), *quoting, Miller v. Miller,* 22 N.Y.2d 12, 15–16, 290 N.Y.S.2d 734, 737, 237 N.E.2d 877, 879 (1968).

The state interest of the California law is to protect the contractual rights of those who cohabit within California's territorial borders. Thus the "facts or contacts which obtain significance," *id.,* are those which show that a couple cohabited in California. Here, Bower clearly alleges that she and Weisman cohabited in California, thus bringing them "within the purpose of the particular law in conflict." *Daystrom,* 24 N.Y.2d at 382, 300 N.Y.S.2d at 825, 248 N.E.2d at 584. That she and Weisman may also have cohabited elsewhere does not, of course, affect California's interest in allowing a lawsuit sounding in implied contract that arose out of cohabitation within its

borders. *See e.g., Alderson v. Alderson,* 180 Cal.App.3d 450, 225 Cal.Rptr. 610 (Cal. Ct.App.1986) (couple cohabited in Oregon before cohabiting in California). Therefore, the court will apply California law in the Sixth claim.

### 2. Bower Has Alleged an Action Under California Law

 Weisman argues that Bower's claim fails even under California law. First Weisman argues that Bower's complaint is fatally deficient because it "fails to state the subject matter of the alleged implied contract with sufficient certainty." Because Bower has not listed all of the specific property she says is covered by the contract, Weisman argues that the complaint must fail. Bower has alleged that she "is entitled to legal title to one-half the real and personal property accumulated by Weisman during the period of their relationship." Under federal notice pleading, only fraud and mistake are required to be pleaded with particularity. Fed.R.Civ.P. 9(b). Bower's statement is thus adequately specific.

In addition, Weisman argues that to sustain a *Marvin* action, "a plaintiff must affirmatively allege that the agreement relied upon does not rest on illicit meretricious consideration," and cites *Taylor v. Fields,* 178 Cal.App.3d 653, 224 Cal.Rptr. 186 (Cal.Ct.App.1986), in support of this proposition. *Taylor,* however, is barren of any discussion regarding "affirmatively" pleading lack of meretricious consideration. It addresses pleading at all only insofar as the plaintiff had explicitly pled that consideration for the alleged contract had included meretricious consideration—to wit acting as a "lover." *Id.* at 194. Even more to the point, *Taylor* was an appeal from a trial court's granting of a motion for summary judgment; having considered evidence adduced during discovery, the court held that the "rendering of sexual services [was] inseperable from the rest of the contract." *Id.* No such factual conclusion can be established on this 12(b) motion.

Bower has alleged that she "lived together and shared residences" with Weisman, and that her services included: "attending to Weisman when he was ill or depressed, acting as a companion and confident to Weisman ... devoting substantially all her time and effort to Weisman during the period of their relationship." Nowhere in the complaint has she alleged that sexual services were a part of the contract. Under California law, "Before a nonmarital contract is to be deemed unenforceable under *Marvin,* it must be found to *explicitly* rest upon a consideration of meretricious sexual services and even then the contract will fail 'only to the extent' that it does so." *Alderson v. Alderson,* 180 Cal.App.3d 450, 225 Cal.Rptr. 610, 617 (Cal.Ct.App.1986) (emphasis added). *See also Taylor,* 224 Cal.Rptr. at 193 ("[E]ven if sexual services are part of the contract's consideration, any severable portion of the contract supported by independent consideration will be enforced.").

Finally, in his Reply Memorandum of law, Weisman argues facts outside the complaint. It is inappropriate for a court in a 12(b)(6) motion to rely on material outside the pleadings submitted by defendants unless converting the motion into a Rule 56 motion and giving plaintiff an opportunity to respond. *Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985). Accordingly, the court has disregarded the affidavits discussed by defendants.

### III. Failure to Comply with Previous Court Order

Defendants argue that Bower has failed to comply with the court's direction to allege which defendant committed which act. In the complaint that was the subject of that motion, Bower employed the term "defendant" without specification. Bower has now removed that uncertainty by alleging that *each* of them committed *each* of the acts in the first five claims, and that Weisman alone was responsible for certain acts in the sixth. Whether she will be able to prove this is another matter, but Bower has removed the flaw of indefiniteness as directed by the court, and enjoys the privilege of pleading inconsistently and in the alternative. Fed.R.Civ.P. 8(e)(2).

## IV. FWC's Claim of Lack of Jurisdiction

### A. Contacts

 FWC claims that it has insufficient contacts with this forum to be subject to jurisdiction. Personal jurisdiction in a federal diversity case is determined by reference to the law of the jurisdiction in which the court sits. *United States v. First National City Bank,* 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). In doing so, a court may rely on material outside the pleadings to establish jurisdictional facts, the materials must be taken in the light most favorable to the plaintiff, and the plaintiff needs to make only a *prima facie* showing of jurisdiction, notwithstanding a controverting presentation by the moving party. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). *See also Hoffritz,* 763 F.2d at 55.

New York Civ.Prac.Law § 301 provides: "A court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore." This preserves earlier New York case law "which provided that a corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz For Cutlery v. Armajac, Ltd.,* 763 F.2d at 58 (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915 (1917)).

In discussing what constitutes "doing business," the Second Circuit has observed: "The New York courts, in applying the pragmatic test for section 301 jurisdiction, have focused upon factors including: the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Id.*

Here Bower has put forth facts to meet enough of these criteria to establish *prima facie* jurisdiction under § 301. Among other documents, Bower has submitted to the court a memorandum addressed to her and others from a Mitchell Reinschreiber, who she identifies as FWC's accountant and financial advisor. The memo contains a section titled "New York Operations," and lists a number of FWC's contacts with the New York forum. For instance, it lists the 73rd Street property as an "Office and Entertainment Facility." It directs a Janet Green, apparently FWC's New York agent, to notify all creditors that bills and statements "should be mailed directly to Frederick Weisman Company in care of our office." It further directs that accounts should be examined for proper name and address, "and if necessary the *name changed to read Frederick Weisman Company* for operating and maintenance expenditures. Examples: utility companies (i.e. gas, water, electric and telephone companies)." (emphasis in original).

Expenditures explicitly designated as those that FWC was responsible for included:

"1) Office supplies

2) Interior maintenance

3) Entertainment and business promotion"

In addition, the memo sets up a standardized system for reimbursement of "expenses or purchases on behalf of Frederick Weisman Company" with relation to the "New York Operations." A supply of special forms was to be provided, and it was decreed that for all expenditures "for entertainment or business promotion [the expense report] *must* indicate ... 1) Name of parties involved and their title or responsibility ... 4) Business purpose of the event."

The memo also shows that FWC at one time had a bank account with the "Bank of New York." In sum, FWC, as shown through the words of its accountants, has every indicia of a corporation "doing business" in New York: an office; a bank account, elaborate standing reimbursement procedures for "business promotion;" and an agent to manage the 73rd Street facility.

FWC's accountant's version is reinforced by Bower's affidavit. She swears that Weisman, FWC's sole owner and director, used the 73rd street property as FWC's office, placed an FWC listing in the New York telephone directory, and from 1980 to 1986 conducted business from the property on behalf of FWC on a regular basis.

**B. Service**

In papers signed and dated September 2, 1986, FWC claims also that it has never been served with a summons in this case, and was served with the Third Amended Complaint only by the insufficient means of the mail.

Fed.R.Civ.P. 4(e) provides: "Whenever a statute of the United States ... provides for service of summons ... upon a party not ... found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute...." New York Civ.Prac.Law § 311(1) allows that personal service of a summons be made "upon any domestic or foreign corporation ... and to any ... agent authorized by appointment or by law to receive service."

Bower has produced proof of service affidavits that swear that the summons on the Second Amended Complaint, and the Third Amended Complaint were personally served on August 29, 1986 on CT Corporation, the agent authorized by FWC to receive service.

IT IS SO ORDERED.