**OLIN CORPORATION, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants.**

**No. 84 Civ. 1968 (LBS).**

United States District Court, S.D. New York.

Dec. 7, 1992.

---

Anderson Kill Olick & Oshinsky, P.C., New York City (Stephen A. Dvorkin, of counsel), for plaintiff.

Mudge Rose Guthrie Alexander & Ferdon, Paul R. Koepff, John L. Altieri, Gabriella S. Tussusov, New York City, for defendant Ins. Co. of North America.

Zelle & Larson, Wm. Gerald McElroy, Waltham, MA, Zelle & Larson, Paul L. Gingras, Michelle K. Enright, Minneapolis, MN, D'Amato & Lynch, Jerome Murray, Donna Hughes, New York City, for defendant Employers Ins. of Wausau.

Gottesman, Wolgel, Secunda, Malama & Flynn, P.C., Lawrence L. Flynn, New York City, for defendant Great American Ins. Co.

Condon & Forsyth, Katherine B. Posner, New York City, Peterson & Ross, Chicago, IL, for defendants Certain Underwriters at Lloyds, London and Various London Market Ins. Companies, London and Edinburgh Ins. Co. Ltd., and North River Ins. Co.

Rogers & Wells, Joseph H. Spain, New York City, for defendant Federal Ins. Co.

Seward & Kissel, Dale C. Christensen, Jr., New York City, for defendant Hanover Ins. Co.

Hopkins & Sutter, Richard H. Gimer, Katherine A. Underhill, Washington, DC, Locker, Greenberg & Brainin, New York City, for defendants Falcon Ins. Co., Commercial Union Ins. Co. and C.E. Heath Compensation & Liability Ins. Co.

Bower & Gardner, Barry G. Saretsky, Jonathan Gardner, New York City, Bromley, Greene & Walsh, James W. Greene, Washington, DC, for defendants American Re–Insurance Co., Continental Cas. Co., Capital Markets Assur. Corp., Allstate Ins. Co.

Day, Berry & Howard, Scott P. Moser, Hartford, CT, for defendant The Aetna Cas. & Sur. Co.

LeBoeuf, Lamb, Leiby & MacRae, Elizabeth B. Sandza, Rocco N. Covino, Washington, DC, for defendant Government Employees Ins. Co.

Postner & Rubin, Thomas G. DeLucca, New York City, for defendant Fireman's Fund Ins. Co.

Steptoe & Johnson, Virginia White–Mahaffey, Washington, DC, for defendant The Home Ins. Co.

Sheft & Sheft, Leonard Sheft, New York City, for defendants American Home Assur. Co., Lexington Ins. Co., Nat. Union Fire Ins. Co. of Pittsburgh & Granite State Ins. Co.

Smith, Mazure, Director & Wilkens, Stuart Wilkens, New York City, for defendant Nat. Union Fire Ins. Co. (Primary).

Bumgardner, Hardin & Ellis, George Hardin, Springfield, NJ, for defendant Harbor Ins. Co.

Day Berry & Howard, James F. Stapleton, Stamford, CT, for defendant General Re–Insurance Co.

## OPINION

SAND, District Judge.

This controversy, in various incarnations, has generated litigation which has been pending in federal and state courts for the last ten years. The facts are fully set out in previous opinions of this Court, familiarity with which is presumed. *Olin v. Insurance Company of North America*, 762 F.Supp. 548, 550–55 (S.D.N.Y.1991), *aff'd*, 966 F.2d 718 (2d Cir.1992); *Olin v. Insurance Company of North America*, 743 F.Supp. 1044, 1046–48 (S.D.N.Y.1990), *aff'd*, 929 F.2d 62 (2d Cir.1991). The parties are currently before the Court on a number of motions, which fit into two categories. The first category includes motions by the plaintiff, Olin Corporation ("Olin"), to dismiss various pleadings of several defendants. The second category includes motions by several defendants to stay an action commenced by Olin in state court in Connecticut. After a brief discussion of the procedural history relevant to these motions, we will address each of the categories in turn.

### Procedural History

Hanover Insurance Company ("Hanover") commenced an action on December 3, 1982, in this Court against Olin, Employers Insurance of Wausau ("Wausau"), Insurance Company of North America ("INA"), and National Union Fire Insurance Company of North America ("National Union"). (Complaint, *Hanover Insurance Co. v. Olin Corp.*, 82 Civ. 8035 (LFM) (S.D.N.Y. 1982)). Six months later, on July 1, 1983, Olin filed an action in United States District Court for the District of Columbia. (Complaint, *Olin Corp. v. Insurance Company of North America*, 83–1900 (D.D.C., July 1, 1983)). Olin moved to dismiss or stay the first filed New York action, but the motion was denied by Judge MacMahon, because, among other considerations, he suspected that forum shopping was behind Olin's attempt to litigate in the District of Columbia.

All parties to Olin's District of Columbia action then entered a stipulation providing for transfer of the *Olin* action to this Court, and an order was signed effecting that transfer on February 27, 1984 by Judge Bryant of the U.S. District Court in the District of Columbia. The stipulation provided in part that "[w]hereas, the parties wish ... to avoid a multiplicity of actions, [it is agreed that] [d]uring the pendency of the Olin Action, no party hereto will commence any other action asserting claims that have been asserted in the Olin Action or in the Hanover Action...." Stipulation, ¶ 4. In conjunction with the transfer, the *Hanover* action in this Court was dismissed without prejudice. On April 6, 1984, Olin filed an amended complaint in this Court.

On August 31, 1991, Wausau and Hanover filed a joint motion to supplement their pleadings. On October 3, 1991, Olin moved to dismiss INA's second counterclaim, which encompassed all present and future environmental claims between Olin and INA. On October 25, 1991, Olin filed an action in Connecticut state court. (Complaint, *Olin Corp. v. Hanover Insurance Co.*, Cv–91–01204065 (Conn.Super.Ct.)). Olin's Connecticut action covered the same parties and sites as the action in this Court, and also added new parties and sites. In its papers opposing Olin's motion to dismiss INA's second counterclaim, INA included a cross-motion for an order prohibiting Olin from proceeding in Connecticut. On December 3, 1991, INA withdrew that motion.

On December 9, 1991, the Court rendered two decisions. First, we denied Olin's motion to dismiss INA's second counterclaim, stating that "this Court [is] satisfied that in the context of this litigation, it states a cause of action over which this Court has jurisdiction." Second, we granted leave to Hanover and Wausau to file supplemental pleadings, stating that "this Court [is] satisfied that it was the intent of the parties, as well as being in the interest of judicial economy, that all of these related claims be litigated in this single forum."

On December 13, 1991, four days after this Court denied Olin's motion to dismiss INA's second counterclaim and granted Hanover and Wausau's motion to supplement their pleadings, Olin made an ex parte application to the Connecticut Superior Court in Stamford seeking an order to show cause why INA, Hanover, and Wausau should not be enjoined from litigating the environmental claims involved in the Connecticut action in the Southern District of New York. The Clerk of the Court signed the order to show cause. In obtaining that ex parte order, Olin did not disclose to the Connecticut court this Court's December 9, 1991 decrees.

On January 13, 1992, in lieu of answering Olin's Connecticut complaint, INA and certain other insurers made a joint motion to the Connecticut court seeking to dismiss Olin's Connecticut action on the ground of forum non conveniens, or alternatively, to stay the Connecticut action until the completion of the case before this Court. Those motions before the Connecticut state court have been held in abeyance by that court pending the decision on the motions currently before this Court.

On January 24, 1992, INA filed a new motion in this Court to stay the proceeding in Connecticut. Many of the defendants have made similar motions or joined INA's motion. The Court will address the propriety of a stay in the context of INA's motion, addressing any issues which are specific to any particular defendant as they arise.

By motions dated February 25, 1992, and September 14, 1992, Olin moved to dismiss Wausau's supplemental pleadings, as well as the counterclaims of certain defendants and the answers of certain other defendants, all of which will be discussed in further detail below.

### Discussion

I. Olin's Motions to Dismiss Pleadings

Hanover's supplemental pleading asserts a single counterclaim against Olin seeking a declaration of Hanover's and Olin's duties and obligations with respect to 12 enumerated environmental claims. Hanover also asserts cross-claims against INA, Wausau, National Union, and Certain Underwriters at Lloyds, London and Various London Market Insurance Companies, London and Edinburgh Insurance Company Limited, and North River Insurance Company (the "London Insurers"), seeking contribution with respect to those 12 environmental claims. Olin does not challenge Hanover's supplemental pleading.

Wausau filed its supplemental pleading on December 23, 1991. No party having answered Wausau's pleading, Wausau filed a First Amended Counterclaim and Cross-Claim pursuant to Rule 15(a) on December 31, 1991. Wausau's amended counterclaim identifies ten additional counterclaim defendants, three of which, Aetna Casualty & Surety Co. ("Aetna"), General Reinsurance Corporation ("General Re") and Greenwich Insurance Company ("Greenwich"), maintain their principal place of business in Connecticut, the same state in which Olin

maintains its principal place of business. Wausau's amended pleading also includes a cross-claim against all other defendants. Wausau's pleading seeks a declaration of the rights and obligations of all the parties with respect to approximately 100 environmental sites.

A number of the defendants, in the course of answering Wausau's pleading, counterclaimed against Olin, seeking judgment declaring their respective rights and obligations under the policies. Olin moves to dismiss the counterclaims asserted by Fireman's Fund Insurance Company ("Fireman's Fund"), Commercial Union Insurance Company ("Commercial Union"), C.E. Heath Compensation & Liability Insurance Company ("C.E. Heath"), and The Home Insurance Company ("The Home"). By a later dated motion, Olin also seeks to dismiss the answers filed in response to Wausau's amended pleading by Federal Insurance Company ("Federal"), Government Employees Insurance Company ("Geico"), Aetna, and Harbor Insurance Company ("Harbor"), as well as the answers filed by Wausau, Federal, and Aetna in response to the subsequently filed claim and cross-claim of Harbor.

### A. *Olin's motion to dismiss Wausau's Counterclaim:*

At the heart of Olin's motions is its attempt to have the Court dismiss Wausau's counterclaim on the ground that the Court lacks subject matter jurisdiction. Olin's argument is that although Wausau denominates as counterclaim defendants (along with plaintiff) two Connecticut insurance companies,[1] the Court should realign those parties as adverse to Olin. Such a realignment would deprive the Court of subject matter jurisdiction, because complete diversity would be lacking. For the reasons detailed below, the Court rejects Olin's argument that the parties must be realigned.

There is no question that to sustain jurisdiction based on the diversity of the parties, there must exist a substantial, actual controversy "between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941). Furthermore, it is the court's duty to look beyond the pleadings and arrange the parties according to their sides in the dispute. *Id.* Relying on these two principles, Olin argues that the newly joined counterclaim defendants are really on the opposite side of the dispute from Olin, because the primary goal of all the insurers is to avoid obligation to Olin under the policies.

Realignment is proper where a plaintiff, in the complaint, aligns the parties in a way which is not in accord with the actual controversy between the parties. In such a situation, a court must determine whether there is a "collision of interests," looking to the "principal purpose of the suit and the primary and controlling matter in dispute." *Indianapolis*, 314 U.S. at 69, 62 S.Ct. at 17, (citations omitted). If no such actual controversy exists between the parties as aligned, the court must realign the parties to reflect their true interests. If such realignment destroys diversity, then the claim must be dismissed for lack of subject matter jurisdiction.

Plaintiff's argument, that the two Connecticut companies currently aligned on the same side of the counterclaim with plaintiff should actually be on the opposite side, thus destroying diversity, fails on two separate grounds.

First, plaintiff cites no case where realignment was found to be appropriate on a counterclaim where the court had proper subject matter jurisdiction over the main action. Plaintiff instead relies on three cases, *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 942 F.2d 862 (3d Cir.1991); *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 955 F.2d 1085 (6th Cir.1992); and *The Travelers In-*

---

1. Wausau originally named Greenwich Insurance Company, a Connecticut company, as successor in interest to Harbor Insurance Company. However, Harbor, in its answer, states that Greenwich did not succeed to Harbor's interest in the policy at issue. Harbor is a California corporation with its principal place of business in California, and its involvement in the counterclaim poses no problem with regard to diversity jurisdiction.

*dem. Co. of Illinois v. Metropolitan Life Ins. Co. et al.,* 798 F.Supp. 156 (S.D.N.Y. 1992), all of which involve realignment by the court of the *original complaint,* not of a subsequent counterclaim. In both *Crown* and *Thomas,* the courts used the "primary purpose" test, that is they looked to the plaintiff's primary purpose in bringing the claim, to determine the proper alignment of the parties with regard to the complaint. Judge Leval, in the *Travelers* case, used both the "primary purpose" test and the "collision of interests" test,[2] (without deciding which test should govern in this district), with regard again to *plaintiff's* claims. Performing that same test on this case, it is clear that the parties are correctly aligned on Olin's complaint, since the primary purpose of Olin's suit is to determine the liability of its insurers. These cases are not authority for realigning parties on a counterclaim.

The Fifth Circuit, in *Zurn Indus., Inc. v. Acton Constr. Co.,* 847 F.2d 234 (5th Cir. 1988), holds that it is improper for a court to consider counterclaims or cross-claims for purposes of determining whether realignment is appropriate. In *Zurn,* a Pennsylvania subcontractor brought suit against two Texas defendants and a Minnesota defendant. The Fifth Circuit reversed the district court which, having taken into consideration counterclaims and cross-claims, had realigned the parties such that there was a Texas party on either side. Although the passage is lengthy, it is apposite and persuasive, and will be quoted in full:

> The district court realigned the parties according to what it viewed as the two "primary" claims. The court took all of the various claims including the counterclaims and cross-claims and determined which two were the "primary" claims. Joining all of the claims and deciding which are the "primary" claims is not warranted by *City of Indianapolis.* The objective of *City of Indianapolis* realignment is only to insure that there is a *bona fide* dispute between citizens of different states (citation omitted). The determination of the "primary and controlling matter in dispute" does not include the cross-claims and counterclaims filed by the defendants. Instead, it is to be determined by plaintiff's principal purpose for filing its suit. In complex litigation ... with its various claims flying back and forth, there are two distinct steps in the jurisdiction determination. First, the court examines the primary or original purpose for filing suit. If the parties are not realigned on that claim, and there is no showing that the claim was a sham simply asserted for federal jurisdiction, subject matter jurisdiction exists. At that point, the various other claims may be examined to determine if they are properly in the court's ancillary jurisdiction or have an independent basis for federal jurisdiction.

847 F.2d 234, 237.

As in *Zurn,* the parties here are properly aligned on Olin's complaint, and therefore subject matter jurisdiction exists. No realignment consideration is required or appropriate on Wausau's counterclaim. Furthermore, the Court does not need to decide whether Wausau's counterclaim is within its ancillary jurisdiction, because on the alignment as it stands, there is complete diversity on both the counterclaim and the cross-claim.

Olin's realignment argument fails on a second separate ground, which is as follows. Even if it were appropriate for a court to consider realignment on a counterclaim, it is by no means clear that this Court would employ the "primary purpose" test as was applied by the *Crown* and *Thomas* courts. That test, to reiterate, provides that if the primary purpose of the suit is at odds with the alignment, the court would realign the parties. The Seventh, Eighth and Tenth circuits have not used the "primary purpose" formulation, but instead have used another test derived from *Indianapolis,* a "collision of interest test", which provides that if there is a substantial conflict between parties aligned on opposing sides, even if it is not the primary purpose of the suit, realignment is inappropriate. *See e.g., American Motorists Ins. Co. v. Trane,* 657 F.2d 146 (7th Cir.1981);

---

**2.** The distinction between these tests will be discussed below at pp. 1148–49.

*Farmers Alliance Mut. Ins. Co. v. Jones,* 570 F.2d 1384 (10th Cir.), *cert. denied,* 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 119 (1978); *Universal Underwriters Ins. Co. v. Wagner,* 367 F.2d 866 (8th Cir.1966).

The Second Circuit has not specifically ruled on which formulation of the test it approves, but the courts in this district have applied the collision of interests test. For example in *American Mutual Liability Ins. Co. v. Flintkote Co.,* 565 F.Supp. 843 (S.D.N.Y.1983), Judge Knapp declined to realign the parties where the plaintiff, a Massachusetts insurance company, had sued in state court both the insured, a Delaware corporation, and another insurer which was also a Massachusetts company, and the insured removed to federal court invoking diversity jurisdiction. The insured, Flintkote, sought to have the parties realigned, that is, to have both insurers on the opposite side of the dispute from the insured, and thus to create diversity and establish federal court jurisdiction. The court judged realignment inappropriate, finding a sufficient collision of interests between the two insurance companies to justify the parties being on opposite sides of the controversy. The court stated that "such 'collision of interests' has repeatedly been found to exist between insurers in actions brought by one insurer against other insurance companies (and other parties) to sort out their respective obligations." 565 F.Supp. at 847, citing *Trane, supra,* and *C.Y. Thomason Co. v. Lumbermens Mutual Casualty Co.,* 183 F.2d 729, 733 (4th Cir.1950). The Court found that there was incomplete diversity, and dismissed the suit for lack of subject matter jurisdiction.

A recent decision by Magistrate Judge Bernikow of this court reaches the same conclusion. In *Maryland Casualty Company v. W.R. Grace & Company,* 88 Civ. 2613 (S.D.N.Y. May 12, 1992) (Report and Recommendation to Judge Kram, affirmed by order of Judge Kram on August 31, 1992), plaintiff, an insurer, sued both W.R. Grace, the insured corporation, and twenty-nine other insurers of W.R. Grace, some of which were non-diverse to W.R. Grace. The insured, like Olin, sought to have the court realign the parties, claiming that the primary purpose of the suit was to determine whether any of the insurers owed an obligation to W.R. Grace, and any claims for indemnification were incidental to that primary purpose.

Judge Bernikow rejected W.R. Grace's argument and, relying on *Flintkote* and the cases cited therein, held that the "collision of interests" test applies in this district and recommended that Grace's motion to realign the parties be denied. The Judge explained that "Maryland Casualty has sought a declaration of the rights and obligations of all of the excess carriers ... This type of dispute may be insufficient in the Third and Sixth Circuit, but it appears to raise a substantial conflict in this district." Mealy's Litigation Reports—Insurance, Vol. 6, # 27, p. 11.

Plaintiff's reliance on Judge Leval's opinion in *Travelers* is misplaced because of the factual dissimilarity between that case and the one before this Court. Briefly, *Travelers* was a suit by Travelers, an insurance company incorporated in Illinois with its principal place of business in Connecticut. Travelers sued its insured, Metropolitan Life Insurance Company, and National Union Fire Insurance Company, the issuer of an umbrella and excess policy covering Metropolitan. Metropolitan is a New York corporation with its principal place of business in New York. National Union is a Pennsylvania Corporation with its principal place of business in New York. As pleaded, the parties were completely diverse. Metropolitan argued that the insurers' true interests were aligned against the insured, that realignment was appropriate, and that such realignment would destroy diversity jurisdiction.

As an initial matter, as discussed above, Judge Leval was properly considering realignment on the basis of the complaint. Significantly, in determining that the parties should be realigned, Judge Leval specifically referred to the "manipulation" that can be used by a party to achieve or defeat diversity jurisdiction by artful pleading. This is telling, because such manipulation is a ploy of the party bringing suit, not the party counterclaiming on a claim

for which proper subject matter jurisdiction already exists.

Olin suggests that *Travelers* stands for the proposition that a dispute between different insurers cannot be a sufficient basis of adversity to defeat realignment. This is an incorrect reading of the opinion. Judge Leval makes clear that he is not deciding which test, "primary purpose" or "collision of interests" is the proper one in this district, but that in either case, what is necessary is "that the conflict be an 'actual' and 'substantial collision of interests.'" 798 F.Supp. at 160. Based on this holding, which is not contrary to any view expressed in this opinion, Judge Leval examined the plaintiff's claim against the excess insurer, and found that given the particular facts of the case, the two companies' interests were so unified, and any adversity was so speculative, that the alignment would fail under either test.

Such is simply not the situation here. In *Travelers*, the two insurance companies had issued policies to the insured for the identical time period. Both insurers therefore were primarily concerned with determining whether there was coverage by the primary insurer, Travelers, for one specific year. In contrast, Olin is insured by a number of primary and excess insurers, over a period of time spanning several decades. Each insurer has a distinct interest in establishing that any alleged injury took place during any policy period other than its own. While the various insurers on the amended counterclaim may not be completely adverse to Wausau on every issue or as to every time period, there is no question that there is substantial conflict sufficient to sustain the alignment on the claim.

To summarize, were it appropriate to consider realignment on Wausau's counterclaim, which *Zurn* suggests it is not, this Court would look to see if there were an actual and substantial collision of interests in examining Wausau's counterclaim. Under this test, the Court would find that there is a sufficient collision of interests between Wausau and the insurance companies named in the counterclaim and cross-claim to bar realignment. Since on the present configuration of the case there is

complete diversity, the Court would have subject matter jurisdiction over Wausau's claims.

For the reasons detailed above, Olin's motion to dismiss the first amended counterclaim and cross-claim of Wausau for lack of subject matter jurisdiction is denied.

B. *Olin's motion to dismiss Counterclaims by Fireman's Fund, Commercial Union, C.E. Heath, and The Home:*

In conjunction with its motion to dismiss Wausau's counterclaim, Olin moves to dismiss the counterclaims asserted by Fireman's Fund, Commercial Union, C.E. Heath, and The Home "on similar grounds", (Plaintiff's brief, p. 2). Each of these defendants oppose the motion, arguing that its counterclaim cannot be dismissed on "similar grounds" of lack of subject matter jurisdiction, because each asserts its counterclaim only against Olin, from whom each is completely diverse.

These defendants correctly assert that Olin has not stated in its brief any legal basis for its motion to dismiss the counterclaims. Clearly, the counterclaims of each of these defendants do not in any way destroy the subject matter jurisdiction of the Court, because each defendant names only Olin in the counterclaim, and each defendant is diverse from Olin.

Olin contends that the counterclaims should be dismissed because these defendants did not seek permission from the Court to file counterclaims. This argument is ill-founded, both because it is legally incorrect, and because of the procedural posture of the case at this time.

These defendants argue that the counterclaims they assert are compulsory counterclaims under Fed.R.Civ.P. 13(a), and as such do not require leave of court. That rule provides, in relevant part:

> a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim

and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

As the Second Circuit has recently stated, "the test for determining whether a counterclaim is compulsory is whether a logical relationship exists between the claim and the counterclaim" such that considerations of judicial economy and fairness dictate that all the claims should be heard in one litigation. *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991). A counterclaim which does not meet this test is a permissive counterclaim under Rule 13(b), which provides:

> A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

The primary goal of Rule 13(b) "is to permit the resolution of all controversies between the parties in a single suit." *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 885 (2d Cir.1981).

It is unnecessary for the Court to decide whether these defendants' counterclaims are compulsory or permissive, for in either case, no leave of court is required. The counterclaims asserted are not in the nature of supplemental pleadings, for which permission would be required, because these pleadings were the first opportunity which these defendants had to address the claims regarding the additional sites named by Wausau. Furthermore, this Court's order of December 9, 1991, granting leave to file supplemental pleadings to Wausau and Hanover, indicates this Court's desire to encourage the parties to resolve all their disputes in one action and avoid duplicative litigation. Denying these other defendants permission to counterclaim on the sites added by Wausau would defeat this goal and promote piecemeal litigation.

For the reasons detailed above, Olin's motion to dismiss the counterclaims of Fireman's Fund, Commercial Union, C.E. Heath, and The Home is denied.

C. *Olin's motion to dismiss the answers of Federal, Geico, Aetna and Harbor to Wausau's amended pleadings, and to dismiss answers of Wausau, Federal, and Aetna to Harbor's cross-claim:*

By motion dated September 14, 1992, Olin moved to dismiss what it terms the "derivative" claims which have been asserted by Federal, Geico, Aetna and Harbor in answer to Wausau's counterclaim, as well as the answers of Wausau, Federal and Aetna to Harbor's cross-claim. With the exception of Harbor, these defendants do not claim directly against Olin in their answers, but instead implicate Olin in their answers through the affirmative defenses they raise.

These defendants properly asserted affirmative defenses implicating Olin's conduct in response to Wausau's and Harbor's pleadings, in accord with Rules 8(c) and 12(b). Olin does not provide any reason for seeking dismissal of these answers, and the Court is left to the conclusion that the plaintiff was merely trying to tie up loose ends in the event that the Wausau counterclaim and cross-claim were dismissed. Since the Court has determined that the counterclaim and cross-claim will not be dismissed on jurisdictional grounds, there is no reason to strike the pleadings of the defendants in response to Wausau. In fact, to do so would clearly prejudice these defendants, who have the right to assert any defense they may have against Olin as an affirmative defense against Wausau or Harbor.

Accordingly, Olin's motion to dismiss the answers of Federal, Aetna, Geico and Harbor in response to Wausau's amended pleading, and to dismiss the answers of Wausau, Federal, and Aetna in response to Harbor's counterclaim, is denied.

II. Defendants' Motions to Stay Connecticut Action

Having disposed of the motions relating to dismissal of certain pleadings, we turn to the motions made by several defendants to stay the action brought by Olin now pending in Connecticut state court. Because we find that a stay is

necessary to protect the judgments that this Court has previously rendered and those which we render today, we grant the motions to stay.

The question of whether to stay the proceedings in a state court is never one to be taken lightly, as it impinges on the very delicate balance struck between the federal and state judicial systems. However, the Supreme Court has recognized that in certain situations

> some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.

*Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970).

Federal courts are expressly prohibited from issuing injunctions against state court actions under the Anti–Injunction Act, 28 U.S.C. § 2283, except under certain limited circumstances. The statute reads:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

INA argues that this Court should issue an injunction against the Connecticut action both because it is necessary in aid of this Court's jurisdiction, and in order to protect or effectuate this Court's judgments. Alternatively, INA argues that this Court is justified in issuing a stay under the All Writs Act, 28 U.S.C. § 1651. That statute reads, in relevant part:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

The two statutes are closely related, and "section 2283 must be construed in connection with section 1651". *Baker v. Gotz,* 415 F.Supp. 1243, 1247 (D.Del.1976). Fur-

thermore, courts have held that where an injunction is proper in order to protect or effectuate the judgments of a federal court, it is within that Court's power to issue the injunction under the All Writs Act, even though the language of that statute only expressly refers to "aid of ... jurisdiction[ ]", *Ward v. Pennsylvania New York Central Transportation Co.,* 456 F.2d 1046, 1048 (2d Cir.1972). Because we find that an injunction is necessary to protect and effectuate the prior judgments of this Court, we are not prohibited from issuing the stay by the Anti–Injunction Act, and we have the power to issue the injunction under the All Writs Act.

Olin argues, correctly, that the exceptions to the Anti–Injunction Act must be narrowly construed. Mindful of this, courts have generally declined to apply the "in aid of jurisdiction" exception to the situation where federal and state cases are merely simultaneously pending in personam actions. *Maryland Casualty Co. v. W.R. Grace & Co.,* 726 F.Supp. 62, 64 (S.D.N.Y.), aff'd, 889 F.2d 1231 (2d Cir. 1989); *Bower v. Weisman,* 650 F.Supp. 1415 (S.D.N.Y.1986); *Crews v. Dickson,* No. CV 86–3858, 1987 W.L. 6393 (E.D.N.Y. Feb. 3, 1987). In fact, the cases cited by both sides indicate that injunctions are granted pursuant to this exception most often where the court's jurisdiction is in rem, or where the court has been heavily involved in settlement negotiations or the formulation of a consent decree. *United States v. International Brotherhood of Teamsters,* 907 F.2d 277 (2d Cir.1990); *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855 (2d Cir.1988), cert. denied, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989); *In re Baldwin–United Corp.,* 770 F.2d 328 (2d Cir.1985); *White v. Eagle–Picher Indus. Inc. (In re Joint E. & S. Dist. Asbestos Litig.),* 134 F.R.D. 32 (E. & S.D.N.Y.1990).

Jurisdiction in this case is not in rem, nor is the Court directly involved in any negotiations regarding settlement.[3] INA argues that by moving for an injunction in Con-

---

**3.** A special master, Stephen Kaufman, Esq., appointed by the late Judge Lloyd F. MacMahon when the case was pending before him, has from time to time assisted the parties in exploring settlement and will be asked by this Court by separate order to renew his efforts.

necticut Superior Court against this Court, Olin has directly attacked the jurisdiction of this Court, providing a ground for staying the state action "in aid of [this Court's] jurisdiction." Olin's actions in seeking the injunction in Connecticut will be discussed with regard to the other exception to the Anti–Injunction Act; the Court however is satisfied that this type of situation is not one to which the "in aid of jurisdiction" exception was meant to apply.

The third exception to the Anti–Injunction Act is where a stay is warranted "to protect or effectuate" the judgments of the federal court. INA argues that Olin's purpose in filing the Connecticut action is to frustrate certain rulings made by this Court, most significantly, the holding that New York law governs in this case. Were that the only judgment at issue, we would not find it an adequate basis for issuing a stay. While it is apparent that Olin is attempting to relitigate the choice of law issue in Connecticut, (Affidavit of James Harrington, Esq., in Support of Olin's Order to Show Cause, ¶¶ 3, 4), it is equally clear that such relitigation would be barred by principles of collateral estoppel. Although a federal court would have the power to issue a stay to prevent relitigation even where the parties could invoke res judicata or collateral estoppel, *In re Baldwin–United Corp.*, 770 F.2d at 335, we would not feel compelled to do so.

As a preliminary matter, this Circuit holds that the exception to protect or effectuate judgments applies to both final judgments and interlocutory judgments. *Sperry Rand Corp. v. Rothlein*, 288 F.2d 245, 248 (2d Cir.1961); *Amalgamated Sugar Co. v. NL Industries*, 825 F.2d 634, 639 (2d Cir.), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987).

The judgment regarding the choice of law issue, found at *Olin v. INA*, 743 F.Supp. 1044, 1048–49 (S.D.N.Y.1990) and affirmed, 929 F.2d 62 (2d Cir.1991), although quite pivotal here, is far from being the only judgment which warrants protection and enforcement. We must look as well at both the decisions rendered on December 9, 1991, and the rulings made today. Taken together, these decisions establish a comprehensive action, with the Southern District as the chosen forum, wherein all the parties are properly before this Court to determine the respective liability on all the environmental claims. Given this scenario, it is properly within the discretion of this Court to enjoin the parties from litigating these same issues again in Connecticut.

Pausing momentarily on the choice of law decision, it is clear from Olin's application for the Order to Show Cause to the Connecticut court that plaintiff intends to argue that Connecticut law governs, rather than New York law. The Supreme Court in *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988), although remanding to the district court for entry of a more narrowly tailored injunction, explained that a federal court decision on choice of law prevents a subsequent state law action seeking to apply a different jurisdiction's law. In *Chick Kam Choo*, the federal district court had ruled that Singapore maritime law applied to a case brought by the wife of a Singapore resident who had been accidentally killed in that country while working on a ship owned by Exxon. The Fifth Circuit affirmed the district court's choice of law ruling, and also affirmed the district court's dismissal of the case on forum non conveniens grounds.

Plaintiff then filed suit in Texas state court, alleging claims under both Singapore law and Texas state law. Defendant started a new action in federal court, seeking to enjoin plaintiff from proceeding in state court. The district court granted the injunction, prohibiting plaintiff from litigating in the state court entirely, and the Court of Appeals affirmed. The Supreme Court, in reversing and remanding, emphasized that "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." 486 U.S. at 148, 108 S.Ct. at 1690. Guided by that principle, as are we, the Supreme Court approved of the injunction as regarded the claims under Texas law, because the Federal Court had clearly announced that Singapore law ap-

plied, but found the injunction as issued too broad, as it precluded plaintiff both from litigating under Singapore law, and from arguing the forum non conveniens issue under Texas's more lenient standards.

Similarly, an injunction is warranted here. This Court has clearly ruled, and has been affirmed by the Second Circuit in ruling, that "for each of the insurance policies involved in this dispute, the significant aspects of contract formation and performance occurred in New York. New York has the most significant contacts with the dispute, and we will apply New York law." *Olin,* 743 F.Supp. at 1049. Olin cannot be allowed to relitigate this central issue, where the facts upon which the choice of law decision rests are identical, merely by filing an action in Connecticut alleging claims under Connecticut state law.

Olin argues that the Connecticut action differs from the one before this Court, because the Connecticut action involves parties and sites over which this Court does not have jurisdiction. In this connection, Olin has moved in Connecticut to stay INA, Wausau, and Hanover from litigating with regard to the sites identified in the Connecticut action, and, as discussed in detail above, Olin has also moved to dismiss for lack of subject matter jurisdiction due to the addition of certain Connecticut defendants.

On December 9, 1991, this Court made two rulings which are critical to the disposition of this motion. First, we denied Olin's motion to dismiss INA's second counterclaim, which seeks adjudication of all of Olin's environmental claims. Secondly, we granted Wausau's and Hanover's motion to supplement their pleadings, allowing them to file additional claims seeking a comprehensive resolution of this dispute. In this opinion, we take this framework one step further, by finding that this Court has jurisdiction over the additional parties, joined here as additional counter-claim defendants, (who are all named by Olin in the Connecticut action), and in so doing, we reaffirm the decision that this is the single forum in which this controversy is to be litigated.

By obtaining from the Connecticut Superior Court an ex parte order to show cause why INA, Hanover, and Wausau should not be enjoined from litigating the additional environmental claims in this Court, Olin demonstrates that it is attempting to frustrate the December 9, 1991 orders of this Court. Olin's argument that the Connecticut action involves parties over which this Court lacks jurisdiction, and that it is therefore impossible for this Court to act as a forum for a comprehensive action, has been rejected today in this opinion. This Court is empowered under the All Writs Statute and the Anti–Injunction Act to protect and effectuate the judgments we have rendered by enjoining Olin from litigating its Connecticut action.

One set of defendants, (Falcon, Commercial Union, and C.E. Heath), in addition to joining the motion made by INA, raises the issue of the stipulation signed in 1984, arguing that the stipulation and order are akin to a consent decree which this Court must protect by staying the Connecticut action. Because we find that staying the Connecticut action is necessary to protect the rulings made by this Court, we do not need to reach the question of whether the order issued by the Court in the District of Columbia would justify an injunction. However, it should be noted that the text of the order does not incorporate the provisions of the stipulation; Judge Bryant merely stated that he had taken the stipulation into consideration in approving the transfer of the case to this Court. There is nothing in the actual order which is threatened by Olin's Connecticut action, and therefore it is questionable whether there is anything in that order for this Court to protect or effectuate.

Finally, the Court has waded through the lengthy letters written by the London Insurers and Olin concerning an action brought by Olin Hunt Specialty Products, Inc., ("Hunt"), a subsidiary of Olin, in New Jersey state court. In that action, entitled *Olin Hunt Specialty Products, Inc. v. Wallbrook Insurance Company, Ltd., et al.,* Docket No. L–14376–91, Hunt sought a declaration of the rights and obligations of eighteen insurers regarding coverage on

environmental claims regarding six pollution sites. The London Insurers moved to dismiss the New Jersey action, and Judge Hamlin granted the motion on the ground that Hunt's claims were intertwined with Olin's, and under the New Jersey "entire controversy" doctrine, all the claims should be litigated in the Southern District of New York.

Olin argues that the London Insurers have alerted this Court to the New Jersey decision in an attempt to improperly influence the Court by mischaracterizing Olin's behavior in filing its various actions. If that were the motive behind the letters it has not succeeded, because we are unpersuaded that the New Jersey action is relevant to the motions pending before this Court. There is no motion before the Court to join any new parties or to add any new claims regarding different sites as a result of the New Jersey action. Since the New Jersey action was dismissed, there is obviously no motion to stay the New Jersey action. If any of those potential motions were before the Court, we would have to explore the merits of the arguments set out in the correspondence with the Court, including the London Insurer's contention that comity would require this Court to give effect to Judge Hamlin's ruling that all claims must be brought only in this forum. However, these motions are not before the Court, and we decline the invitation to consider matters not properly presented.

### Conclusion

For the reasons stated above, Olin's motions to dismiss pleadings dated February 25, 1992 and September 14, 1992, are denied in their entirety. Defendants' motions to enjoin Olin from proceeding with the litigation pending in Connecticut Superior Court are granted.

SO ORDERED.